IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLARICE A. PETERSON,
n/k/a CLARICE A. LUCK,

      Petitioner,

vs.                                                     No. CIV 03-0660 JB/LAM

DEAN S. PETERSON,

      Respondent,

DEAN S. PETERSON,

      Plaintiff,

vs.

PAMELA HYDE, SECRETARY,
HUMAN SERVICES DEPT.,
STEPHANIE GONZALES, DIRECTOR,
CHILD SUPPORT ENFORCEMENT
DIVISION, ELIZABETH CUNNINGHAM,
and MARK CRADDOCK,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's First Motion and Brief for Partial Summary Judgment, filed September 12, 2003 (Doc. 34); (ii) the Plaintiff's Third Motion and Brief for Partial Summary Judgment as to Elizabeth Cunningham, filed December 23, 2003 (Doc. 98); and (iii) the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, filed January 14, 2004 (Doc. 122). The Court held a hearing on this matter on March 12, 2004. The primary issue is whether the Defendants deprived Plaintiff Dean S. Peterson of a property interest -- his wages -- without notice and without a pre-deprivation hearing or other opportunity to be heard

in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. Because the Court finds that the Plaintiff's evidence does not show that there was a constitutional violation which would entitle him to injunctive relief against the Defendants sued in their official capacities, and that the Defendants sued in their individual capacities are entitled to qualified immunity, the Court will grant the Defendants' motion for summary judgment and deny the Plaintiff's motions for partial summary judgment.

## **LEGAL BACKGROUND**

The New Mexico Support Enforcement Act provides for income withholding from child support obligors "to ensure compliance with the order for support and provide for the liquidation of any delinquency which may have accrued." NMSA 1978 § 40-4A-3. The Support Enforcement Act provides that a prerequisite to the issuance of a Notice to Withhold Income is the prior issuance of a Notice of Delinquency. See NMSA 1978 § 40-4A-5(A) and (B). The New Mexico Child Support Enforcement Division ("CSED"), a division of the New Mexico Human Services Department, issues the Notice of Delinquency before the Notice to Withhold Income. The Notice of Delinquency must inform the target of the amount to be withheld, and among other things, "of the procedures available to contest the income withholding," and that, "unless the obligor complies with the procedures to contest the income withholding, a notice to withhold income shall be served upon the payor." NMSA 1978 § 40-4A-4(C)(3), (4), and (5).

The support obligor "may contest the notice to withhold income by filing a petition with the clerk of the district court within twenty days after service of the notice of delinquency." NMSA 1978 § 40-4A-7. If the obligor files such a petition, the statute directs the state district court to "hear and resolve the matter no later than forty-five days following the service of the notice of delinquency."

NMSA 1978 § 40-4A-9(A). The statute also provides that "[f]ailure to meet the time requirements shall not constitute a defense to the notice to withhold income." Id.

The current statute was amended in 1997. Before that amendment, the statute provided for a twenty day waiting period between the Notice of Delinquency and the Notice to Withhold Income. See NMSA 1978 § 40-4A-5(A)(1985). If the support obligor did not initiate the procedure to avoid income withholding within those twenty days, CSED could issue a Notice to Withhold Income. See NMSA 1978 § 40-4A-5(B) and (C). When the New Mexico Legislature amended the statute in 1997, it removed the language providing that an obligor could "avoid" wage withholding by filing a petition. See NMSA 1978 § 40-4A-4 (Notes on the 1997 amendment).

## **FACTUAL BACKGROUND**

Peterson and his former wife, Clarice A. Peterson, divorced on December 12, 1988, in Chaves County, New Mexico. The Chaves County District Court granted custody of the couple's two minor children to Clarice and ordered Peterson to pay Clarice child support of $500.00 per month. Clarice and Peterson later voluntarily modified that amount, as allowed by the court order. They did not, however, obtain the Chaves County District Court's ratification of their voluntary modification. Thus, the 1988 court order remained in effect. The order provided for wage withholding upon delinquency.

In October 2000, Peterson voluntarily ceased his child support payments. Clarice sought assistance from the CSED. Defendant Craddock, an employee with CSED, calculated Peterson's delinquency at approximately $51,000.00. On January 20, 2001, CSED sent Peterson a bill at his Wisconsin home informing him of this delinquent amount. Shortly after receiving the bill in January 2001, Peterson began looking for an attorney to assist him in dealing with the asserted delinquency.

See Deposition of Dean S. Peterson at 78:11 to 79:13 (taken December 30, 2003).

On February 14, 2001, Craddock signed and CSED issued an Order/Notice to Withhold Income, pursuant to NMSA 1978 §§ 40-4A-4, 40-4A-5 (1997), against Peterson and sent it to Peterson's employer. See Order/Notice to Withhold Income (dated February 14, 2001); Defendants' Response to Request for Admission No. 44. The Notice to Withhold Income alleged child support arrearges in the amount of $51,360.25 and current child support of $500.00 per month. See id. The Notice required the employer to withhold $500.00 per month from Peterson's wages for alleged current child support. The Notice did not require withholding for arrearges, only currently owed support. Peterson concedes that his employer showed him the Notice to Withhold Income shortly after February 14, 2001. See Transcript of Hearing at 94:14-17. The Court questioned Peterson's counsel on . Peterson's counsel did not factually dispute the assertion that Peterson had a couple of weeks to object before wage withholding actually began. See id.

As a result of the Notice to Withhold Income that the Defendants issued, Peterson's employer withheld and deducted money from Peterson's wages and paychecks. See Affidavit of Dean S. Peterson ¶ 8, at 2 (executed August 18, 2003). According to Peterson, wage withholding began on March 1, 2001. See Transcript of Hearing at 94:6-7. The Defendants do not dispute that the employer withheld monies from Peterson's wages pursuant to the Notice to Withhold Income that the Defendants issued. They contend, however, that they did not receive Peterson's withheld wages until April 4, 2001.

Peterson contends that the Defendants did not comply, in a number of ways, with New Mexico statutory law before they issued the Order/Notice to Withhold Income. First, the Defendants did not fulfill the prerequisites of subsection A of NMSA 1978 § 40-4A-5 (1997), or of NMSA 1978,

§ 40-4A-4 (1997), before they served the Notice to Withhold Income on Peterson's employer. See Peterson Aff. ¶¶ 16-19, at 3-4; Defendants' Response to First Request for Admission No. 27. Specifically, before issuing the Notice to Withhold Income, the Defendants did not serve or otherwise provide Peterson with a Notice of Delinquency before his employer withheld his wages. Although he acknowledges that he received the bill in January 2001, Peterson contends that the bill did not satisfy the statutory requirements for a Notice of Delinquency because it did not contain the seven necessary disclosures that NMSA 1978 § 40-4A-4(C) requires. See Peterson Aff. ¶ 11, at 3.

On March 12, 2001, Peterson's attorney wrote a letter to CSED stating his intention to file a motion to modify the child support order. On March 22, 2001, CSED realized that it had not issued a Notice of Delinquency to Peterson and corrected its mistake by sending that notice to him. That same day, Peterson filed a motion to modify with the Chaves County District Court. On August 14, 2001, the state court granted Peterson's motion and reduced his child support obligation. The state court found that Peterson was delinquent in support, although to a lesser degree than first asserted by CSED.

## PROCEDURAL BACKGROUND

This case involves multiple dispositive motions. Peterson has filed four motions for partial summary judgment, three of which were fully briefed at the time of the March 12, 2004 hearing. Peterson has also filed a motion to certify this case as a class action. The Defendants have filed a motion to dismiss, or in the alternative, for summary judgment. The March 12, 2004 hearing did not involve the motion to certify as a class action or Peterson's second or fourth motions for partial

summary judgment.[1]  The Court heard oral argument on the Defendants' motion and on Peterson's first and third motions for partial summary judgment.

At the hearing on this matter, Peterson clarified that his single claim against the Defendants is for a federal due process violation under § 1983.  See Transcript of Motion Hearing at 11:20 to 12:6 (March 12, 2004)("Transcript of Hearing").  Peterson also informed the Court that his claims against Pamela Hyde and Stephanie Gonzales are in their official capacity and for injunctive relief only.  See id. at 20:4-7.  Peterson's claims against Elizabeth Cunningham and Mark Craddock are individual capacity claims for damages.  See id. at 20:7-13.

The Defendants' motion raises numerous alternative arguments, four in support of a motion to dismiss and nine in support of a motion for summary judgment.  Both parties attached exhibits to their briefing on the Defendants' motion.  Accordingly, at the hearing, the Court treated the Defendants' motion as one for summary judgment, rather than as a motion to dismiss.  At the Defendants' request, the Court heard argument on all three motions simultaneously.

**QUALIFIED IMMUNITY AND SUMMARY JUDGMENT STANDARDS**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  When a defendant raises the defense of

---

[1] On February 23, 2004, the Court granted the Defendants' Motion for an Evidentiary Hearing on Issues Relating to Plaintiff's Motion for Class Certification.  See Memorandum Opinion and Order, filed February 23, 2004 (Doc. 165).  In its order, the Court instructed Peterson to inform the Court if he did not want the evidentiary hearing to take place on March 12, 2004.  Peterson informed the Court, by letter, that he requested additional time to prepare for the evidentiary hearing.  See Letter from R. Matthew Bristol to K'Aun Sanchez (dated February 25, 2004).  Peterson also requested that the Court hear his second motion for partial summary judgment at the same time as the class certification motion.  See id.

qualified immunity, the plaintiff must allege facts showing that the individual defendant's actions violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation. See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). If the plaintiff meets this two-part burden, the defendant "assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute." Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

Under Harlow v. Fitzgerald, and its progeny, courts evaluating qualified immunity claims "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999)(quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). "This order of procedure is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.'" Wilson v. Layne, 526 U.S. at 609 (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). "Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson v. Layne, 526 U.S. at 609 (citing County of Sacramento v. Lewis, 523 U.S. 833, 840-842 n.5 (1998)).

Summary judgment is proper when there is no genuine issue as to a material fact. Under rule 56 of the Federal Rules of Civil Procedure, a party may move for summary judgment , and is entitled to such disposition, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a


summary judgment motion, the Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. See Allen v. Muskogee, Oklahoma, 119 F.3d 837, 839-40 (10th Cir. 1997). The Court's role on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995).

Any alleged issue of fact must be material and genuine. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party cannot rest on mere allegations or denials. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

**LEGAL ANALYSIS**

Because Defendants Cunningham and Craddock, who are sued in their individual capacities, have asserted their right to qualified immunity, Peterson must first show that his allegations amount to a constitutional violation. If he is able to make that showing, he must then demonstrate that the right allegedly violated was clearly established at the time of the Defendants' conduct. Because the Court does not believe that Cunningham's and Craddock's conduct rises to the level of a constitutional violation, these Defendants are entitled to qualified immunity. In the absence of a constitutional violation, Peterson's claims against Hyde and Gonzales in their official capacities also fail. Accordingly, the Court will grant the Defendants' motion for summary judgment and deny the Plaintiff's motions for partial summary judgment.

**I.   THE DEFENDANTS' VIOLATION OF STATE LAW IS NOT A PER SE VIOLATION OF PETERSON'S FEDERAL DUE PROCESS RIGHTS.**

42 U.S.C. § 1983 reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." To succeed in his § 1983 claim, Peterson must show that he was deprived of a federal right by a person acting under color of state law. See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir. 1991).[2] At issue here is whether the Defendants violated Peterson's due process rights, pursuant to the Fourteenth Amendment of the United States Constitution, when

---

[2] The Defendants do not dispute that they acted under color of state law in issuing the Order/Notice to Withhold Income. See Monroe v. Pape, 365 U.S. 167, 183-84 (1961).

they failed to follow the procedure prescribed by state law before withholding child support payments from his wages.  The Fourteenth Amendment specifies that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

Because § 1983 requires the violation of a *federal* right, the United States Court of Appeals for the Tenth Circuit has recognized that a violation of state law does not necessarily amount to a violation of federal due process requirements.  See Gonzales v. City of Castle Rock, 366 F.3d 1093, 1100 n.4 (10th Cir. 2004)("We certainly concur with the common refrain in these cases that the mere violation of state law does not automatically give rise to a constitutional due process violation, and that the due process clause should not be so stretched that it becomes 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'")(citing Daniels v. Williams, 474 U.S. 327, 332(1986)(quoting Paul v. Davis, 424 U.S. 693, 701 (1976))).  Thus, federal, not state, law defines constitutional due process.  See Hebert v. State of Louisiana, 272 U.S. 312, 316-17 (1926).

> Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the state.  <u>The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several states and make them the test of what it requires</u>; nor does it enable this court to revise the decisions of the state courts on questions of state law.  What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as "law of the land."  Those principles are applicable alike in all the states, and do not depend upon or vary with local legislation.

Id. (emphasis added).  See also Roush v. Justice, 949 F.Supp. 449, 453 (S.D.W.Va. 1996)("Simply alleging that the state has violated a statute does not, in and of itself, suffice to allege a federal constitutional deprivation.  Section 1983 was intended to vindicate only federal rights determined

-10-

under federal . . . law, not claims arising under state law.")(citing Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990)(violations of state law do not provide basis for due process claim)); Miller v. Carson, 563 F.2d 757, 761 n.7 (5th Cir. 1977)("[T]he violation of state law by a state official, without more, is not a violation of the federal right to procedural due process.")(citing Screws v. United States, 325 U.S. 91, 108-09 (1945)). Thus, the procedures that the New Mexico Child Support Enforcement Act requires are not determinative of the question whether the Defendants deprived Peterson of his due process rights under the federal constitution. The Court must evaluate Peterson's claim in light of the federal standards governing procedural due process.

## II.     PETERSON RECEIVED THE DUE PROCESS THE FEDERAL CONSTITUTION REQUIRES UNDER THE CIRCUMSTANCES.

One of the Defendants' primary arguments is that their conduct does not amount to a constitutional violation. The first step in this argument is the contention that Peterson did not have a protected property interest in his garnished wages. The Defendants rely upon the combination of several New Mexico cases and statutes which define property interests, discuss a parent's absolute duty to pay child support, and allow for the garnishment of wages to pay child support obligations. This argument seems to be in some tension with statements by the United States Supreme Court that persons have a property interest in their wages. See Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 340-42 (1969). While it is true that Sniadach dealt with pre-judgment garnishment as opposed to post-judgment garnishment, the Defendants are unable to provide the Court with authority to directly support their argument that Peterson did not have a protected property interest in his wages. Thus, the Court will assume for purposes of this decision that he had such an interest.

"Once it is determined that due process applies, the question remains what process is due.

It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). See also Fuentes v. Shevin, 407 U.S. 67, 80 (1972)("For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.")(citations and internal quotation marks omitted); Goldberg v. Kelly, 397 U.S. 254, 267 (1970)("The fundamental requisite of due process of law is the opportunity to be heard.")(citation omitted). "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. at 80 (quoting Armstrong v. Manzo, 380 U.S. 545, 552(1965)).

In this case, the Defendants do not dispute that they violated state law. They argue instead that state law does not define federal due process and that they satisfied federal due process standards. The Court agrees that the central issue is not whether the Defendants complied with state law, but whether they met the constitutional requirements of notice and an opportunity to be heard before a deprivation occurred. Because Peterson received notice and had a meaningful opportunity to be heard before the Defendants began withholding his wages, the Court believes that the Defendants satisfied due process.

During the hearing on these motions, Peterson conceded that the applicable New Mexico

-12-

statutes were constitutional and satisfied due process. See Transcript of Hearing at 10:5-15.

> THE COURT: The defendants argue that you're conceding the constitutionality of this statute. I think that's important for the purposes of . . . Parratt v. Hudson. Do you concede the constitutionality of the statute[?]
>
> MR. BRISTOL: I think the statute's fine. I think the way it's being used is wrong.
>
> THE COURT: So the focus here is on the defendant's conduct?
>
> MR. BRISTOL: Yes. As a matter of fact, I think the statute says the standard of behavior that they've fallen below.

Id. Peterson also did not dispute that the statute does not require a hearing before wage withholding begins.

> THE COURT: And I guess what I'm asking you here is, it seems to me the only opportunity to be heard, if they had done everything right, was that the burden, then, was placed on the noncustodial parent to go stop it. And that's what occurred here as well. The burden shifts to the noncustodial parent to go stop it. So once you conceded, as you did this morning, that the statute's constitutional, what's the -- why wasn't there an opportunity to be he[ard] of the same nature?
>
> MR. BRISTOL: He wasn't given the opportunity to be heard. The statute wasn't followed.

See id. at 95:24 to 96:9. Thus, Peterson's primary challenge is not to the Defendants' failure to provide him with a hearing, but their failure to follow the statutory requirements that would have specifically informed him of his opportunity to be heard. The New Mexico statute, both before and after the 1997 amendment, put the burden on the support obligor to take some action to stop or challenge the income withholding. Thus, the fact that Peterson did not receive a hearing before wage withholding occurred is not relevant. The statutes Peterson relies upon -- and which he concedes are constitutional -- do not require such a hearing. Thus, if the Defendants had followed the state statute that Peterson claims would provide him due process, the burden would have been on Peterson to

initiate proceedings to challenge the withholding.

The parties have set forth facts, for the most part undisputed, showing that Peterson received actual notice before his employer withheld any wages and that he had an opportunity to be heard at a meaningful time and in a meaningful manner before his employer withheld monies from his wages. Viewing the facts in the light most favorable to Peterson, wage withholding began on March 1, 2001. Before that time, Peterson had received a bill informing him of the amount of his delinquency. He was aware that he had voluntarily ceased sending payments to his ex-wife. His original child support order provided for income withholding upon delinquency. He had also seen the Order/Notice to Withhold Income that CSED sent to his employer. Thus, Peterson had actual notice that CSED was going to withhold wages from his paycheck before they did so.

Although Peterson argues that he did not receive due process because CSED mailed the Notice to Withhold Income to his employer, rather than to him, the Court believes that the notice requirement is satisfied. Peterson does not dispute that he had actual notice of the proposed wage withholding before it occurred. Due process standards only require "notice <u>reasonably calculated</u>, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. at 314 (emphasis added). "Due process does not require actual notice." <u>Katzson Bros., Inc. v. United States Environmental Protection Agency</u>, 839 F.2d 1396, 1400 (10th Cir. 1988). In this case, however, Peterson received actual notice. Such notice is sufficient to satisfy due process requirements. <u>See</u> <u>Khan v. Ashcroft</u>, __ F.3d __, 2004 WL 1486048 (9th Cir. July 2, 2004)("[A]ctual notice of a hearing is not always required to satisfy the requirements of due process. Actual notice is, however, sufficient to meet due process requirements.").

Because the Defendants sent the Notice to Withhold Income to Peterson's employer approximately two weeks before the time Peterson asserts his wage withholding began, Peterson also had an opportunity to voice his objections to the withholding. He began the process of voicing those objections. He had begun looking for an attorney after receiving the January 2001 bill, his attorney wrote a letter to the agency on March 12, and filed a motion to modify his child support obligation. Thus, the Court believes that the Defendants satisfied minimal due process requirements in this case in that Peterson had actual notice of the wage withholding before it occurred and a window of time during which there was an opportunity to object. Notably, even if the Defendants had followed the New Mexico statute precisely, they could have issued the Notice to Withhold Income immediately after the Notice of Delinquency, thereby subjecting Peterson to wage withholding with no window of time in which to file his petition before withholding began.[3]

Because the Court does not believe that a constitutional violation occurred, Peterson is unable to establish the first element necessary to overcome Cunningham and Craddock's qualified immunity defense. Because the Defendants' conduct does not amount to a constitutional violation, the Court need not address the question whether the right Peterson alleges the Defendants violated was clearly established. Cunningham and Craddock are entitled to summary judgment on the basis of qualified immunity. Hyde and Gonzales are also entitled to summary judgment because the official capacity claims against them cannot stand in the absence of a constitutional violation. Accordingly, the Court will grant the Defendants' motion for summary judgment and dismiss Peterson's claims with

---

[3] The New Mexico statute contemplates such a scenario. It provides that "[t]he income of a person with a support obligation imposed . . . or modified . . . before January 1, 1994, . . . shall become subject to immediate withholding . . . if arrearages occur, without the need for a judicial or administrative hearing." NMSA 1978 § 40-4A-4(A). Peterson does not contend such a procedure is unconstitutional.

prejudice. Based on the same reasoning, the Court will deny Peterson's motions for partial summary judgment.

**IT IS ORDERED** that the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, is granted. For the same reasons, the Plaintiff's First and Third Motions for Partial Summary Judgment are denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

R. Matthew Bristol
Roswell, New Mexico

    *Attorney for the Plaintiff*

Richard E. Olson
Derek L. Brooks
Hinkle, Hensley, Shanor & Martin, L.L.P.
Roswell, New Mexico

    *Attorneys for the Defendants*